## IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
### CIVIL DIVISION

LUTZ SURGICAL PARTNERS, PLLC, on its own behalf and on behalf of all others similarly situated,

      Plaintiff,

      v.

BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., HEALTH OPTIONS, INC., and GUIDEWELL MUTUAL HOLDING CORPORATION,

      Defendants.

Case No.: 17-CA-007537

DIV:

**CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lutz Surgical Partners, PLLC ("Lutz" or "Plaintiff"), based upon personal knowledge as to itself and its own acts, and information and beliefs as to all other matters formed after an inquiry reasonable under the circumstances, hereby sues Defendants Blue Cross and Blue Shield of Florida, Inc., Health Options, Inc. and GuideWell Mutual Holding Corporation and in support alleges as follows:

### NATURE OF THE CASE

1.    Lutz brings this action as a class action on behalf of itself and a class of all similarly situated Florida emergency healthcare service providers seeking redress for Defendants' illegal acts, which have resulted and continue to result in loss of property and detriment to Plaintiff and the putative class.

2.    Blue Cross and Blue Shield of Florida, Inc. ("BCBSF") offers health insurance policies and HMO coverage in Florida. BCBSF d/b/a Florida Blue, offers health insurance

6144728.1

policies directly to Florida residents. BCBSF also offers HMO coverage to Floridians directly and through several affiliates, including Health Options Inc. d/b/a Florida Blue HMO ("Health Options"). GuideWell Mutual Holding Corporation ("GMHC") is the ultimate parent company and controlling organization for both BCBSF and Health Options (collectively, all three are "BCBS" or "Defendants"). Through these health insurance policies and HMO plans, BCBS provides insurance benefits to plan members ("Insureds"). BCBS has contracted with various healthcare providers to provide medical services to its Insureds. Such providers are considered "participating" or "in-network" ("INET"), and have agreed to accept discounted rates from BCBS for the services they provide to Insureds in exchange for BCBS' agreement to encourage Insureds to utilize INET providers.

3.      Lutz is not an INET provider with BCBS. Instead, it is a "non-participating" or "out-of-network" ("ONET") provider, meaning that it has not entered into a contract with BCBS to participate in BCBS' network of providers, nor has it agreed to accept BCBS' discounted in-network fee schedule as payment in full for the provision of health care services to BCBS' Insureds.

4.      Although Lutz is an ONET provider with BCBS, Florida law and Lutz's ethical duties frequently cause it to treat BCBS' Insureds when they require emergency care. When such emergency care is provided, Florida Statutes § 641.513 and § 627.64194 require that BCBS pay Lutz the lesser of Lutz's billed charges, the usual and customary rate for the service provided, or a rate that BCBS and Lutz mutually agree upon following Lutz's provision of the service.

5.      Notwithstanding BCBS' legal obligation to comply with § 641.513 and § 627.64194, however, BCBS has systematically violated its legal obligations by underpaying Lutz for the emergency care services it provided to BCBS' Insureds. BCBS has refused to pay

Lutz's billed charges and has not entered into an agreement with Lutz concerning the rates to be paid. Instead, it has unilaterally paid Lutz amounts that are far below both Lutz's standard billed rates and the usual and customary charges which providers like Lutz bill for the same services in the ordinary course of business. By doing so, BCBS violated, and continues to violate, § 641.513 and § 627.64194.

6.     Lutz, on behalf of itself and the class, seeks a declaration that BCBS' practices alleged herein are illegal, an award of damages and restitution for the injury to their businesses caused by BCBS' illegal practices, injunctive relief requiring BCBS to reprocess emergency service claims that were illegally underpaid, and/or prospective injunctive relief permanently enjoining BCBS from continuing to engage in the illegal conduct alleged herein.

**PARTIES**

**Plaintiff**

7.     Plaintiff Lutz Surgical Partners, PLLC is a health care provider group which maintains a practice in Lutz, Florida. Lutz is a Florida Professional Limited Liability Company with a principal place of business at 19105 U.S. Highway 41 North, Suite 300, Lutz, Florida.

**Defendants**

8.     Defendant Blue Cross and Blue Shield of Florida, Inc., d/b/a Florida Blue Health ("BCBSF"), is a Florida not-for-profit corporation that offers health insurance policies and HMO coverage, in Florida. BCBSF was incorporated in Florida and licensed as an accident and health insurer by the Florida Office of Insurance Regulation in 1980.

9.     Defendant Health Options Inc., d/b/a Florida Blue HMO, an HMO affiliate of Defendant BCBSF ("Health Options"), is a Florida for-profit corporation. Health Options was incorporated in Florida and licensed as an HMO by the Florida Office of Insurance Regulation in

3

1984. Health Options is a 100% owned subsidiary of Diversified Health Services, Inc. ("DHS"). DHS is a Florida for-profit corporation that was incorporated in 1985.

10.     Effective January 1, 2014, BCBSF underwent a reorganization whereby it became a wholly owned subsidiary of a new company, GuideWell Mutual Holding Corporation ("GMHC"). GMHC is a Florida not-for-profit corporation that was incorporated on January 1, 2014.

11.     Prior to January 1, 2014, DHS was a wholly owned subsidiary of BCBSF and BCBSF was Health Options' controlling organization. As part of the January 1, 2014 reorganization, ownership of DHS was transferred from BCBSF to GuideWell Group, Inc., a new company wholly owned by GMHC. At that time, GHMC became the controlling organization for both BCBSF and Health Options.

12.     Defendants BCBSF, Health Options, and GMHC all have their principal place of business at 4800 Deerwood Campus Parkway, Jacksonville, Florida.

13.     BCBSF offers health insurance policies to Florida residents. BCBSF also offers HMO coverage to Floridians directly and through Health Options. BCBSF has violated its legal obligations by underpaying Lutz and other similarly situated healthcare providers for the emergency care services they provided to BCBS' insureds. In addition, based on information and belief, GMHC and BCBSF have caused Health Options to violate its legal obligations by underpaying Lutz and other similarly situated healthcare providers for the emergency care services they provided to BCBS' insureds. GMHC is the ultimate parent company and controlling organization for BCBSF and Health Options. Pursuant to one or more administrative services agreements, BCBSF's employees perform all of Health Services' activities, including but not limited to its administrative, accounting, tax, underwriting, claims, investment, managerial,

4

professional, and technical services. Health Options also has a guarantee from BCBSF to provide sufficient funds to assure the payment of all claims and other liabilities of Health Options.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

14.    This action is brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

15.    In this action, Lutz seeks damages in excess of $15,000, exclusive of interest, costs and attorney's fees.

16.    This Court has subject matter jurisdiction over this case pursuant to § 26.012(2)(a) and § 641.513(5), Florida Statutes.

17.    The BCBS Defendants have substantial contacts with and conduct business in this County. They have offices in Hillsborough County, Florida, insure residents in this County, and make payments to providers in the County. This Court has personal jurisdiction over the Defendants pursuant to § 48.193, Florida Statutes, because they:

    (a)    operated, conducted, engaged in, or carried on a business or business venture in this state and have an office in this state;

    (b)    contracted to insure a person located within this state at the time of contracting;

    (c)    engaged in substantial and not isolated activity within this state, whether such activity was wholly interstate, intrastate or otherwise.

18.    Venue is proper in this Court pursuant to § 47.011, Florida Statutes, because the causes of action asserted herein occurred and/or accrued, among other places, in this County. Venue is also appropriate in this County because the BCBS Defendants have offices in this

5

County, conduct substantial business here, and have reimbursed members of the Class for providing emergency services and care in this County.

19.     All conditions precedent to the bringing and maintenance of this action have been performed, or have otherwise been satisfied or waived.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

20.     Florida law and medical ethics require healthcare providers to provide emergency medical care to any patient who requires such care.

21.     Florida Statutes § 641.3154 further provides that when health care services are provided to a patient insured by an HMO and those services are covered by the HMO's plan, the provider—regardless of whether they are INET or ONET—is precluded from billing the patient for the cost of the services provided. The provider may only seek payment from the HMO.

22.     Likewise, Florida Statutes § 627.64194 provides that when health care services are provided to a patient insured under a health insurance policy and those services are covered by the policy, the provider—regardless of whether they are INET or ONET—is precluded from billing the patient for the cost of the services provided. The provider may only seek payment from the insurer.

23.     The rates INET providers are entitled to receive from an HMO or health insurer for providing emergency services to an insured are set forth in the network contract that the provider entered into with the HMO or health insurer. In contrast, the rates ONET providers are entitled to receive from an HMO or health insurer when they provide emergency services to an insured are set by Florida law.

24.     Florida Statutes § 641.513(5), entitled "Requirements for providing emergency services and care," provides that:

6

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a)     The provider's charges;

(b)     The usual and customary provider charges for similar services in the community where the services were provided; or

(c)     The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

Such reimbursement shall be net of any applicable copayment . . .

25.     Florida Statutes § 627.64194(4) provides that an insurer must reimburse a nonparticipating provider of emergency services "as specified in § 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy . . ."

26.     Despite the unequivocal methodology set forth in Florida Statutes § 641.513(5) and § 627.64194(4) for determining how much an insurer is required to pay ONET providers who provide emergency services to their insureds, BCBS ignored this methodology and pays rates far below those that are statutorily mandated.

27.     BCBS rarely (if ever) pays an ONET provider's billed charges. It has not done so with respect to claims submitted by Lutz.

28.     BCBS also rarely (if ever) negotiates and reaches an agreement with ONET providers concerning the rate that should be paid. It has not done so with respect to claims submitted by Lutz.

29.     Instead, BCBS purports to pay ONET providers, such as Lutz, based on "usual and customary" charges. In fact, however, BCBS routinely pays far less than what is actually usual and customary.

30.     BCBS' payments are even less than the amount that Medicare would pay for the same service, despite the fact that Medicare rates are established by the Federal Government based on budgetary considerations and are much lower than "usual and customary provider charges" as

7

required by § 641.513(5), as recognized by *Baker Cty. Med. Servs., Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845-46 (Fla. 1st DCA 2010) ("it is not appropriate to consider the amounts accepted by providers for patients covered by Medicare and Medicaid" in determining "usual and customary" rates under § 641.513(5)).

31.     The rates that BCBS pays are also far less than those tracked by FAIR Health, Inc. ("FAIR Health"), a national, independent, not-for-profit corporation that monitors and reports on usual and customary charges in order "to bring transparency to healthcare costs and health insurance information." FAIR Health, which was established in the wake of revelations that insurers, such as BCBS, were routinely understating usual and customary rates, maintains a database of usual and customary charges across the country.

32.     FAIR Health was established in October 2009 as part of the settlement of an investigation by the Office of the Attorney General of New York State into the health insurance industry's practice of determining out-of-network reimbursement based on data compiled and controlled by a major insurer, which the Attorney General determined was operating under a clear conflict of interest and was alleged to underpay out-of-network services. FAIR Health was subsequently formed "to establish and maintain a new database that could be used to help insurers determine their reimbursement rates for out-of-network charges and provide patients with a clear, unbiased explanation of the reimbursement process."

33.     Using millions of healthcare claims submitted to it by insurers, health care plans, and providers, FAIR Health created a database that reflects the rates that most providers charge in a given area. Publicly available on its website, a consumer can put in the zip code where a health care service is being provided and the CPT Code to be used by the provider for each specific healthcare

service. Upon the zip code and CPT Code being input into the database, FAIR Health will provide

the "usual, customary and reasonable" rate (or "UCR") for that service. As FAIR Health explains:

> The Estimated Charge is what FAIR Health, based on its database, estimates that a medical provider in your area may bill for the procedure you selected when performed out-of-network. This estimate is based on the charges billed by providers for this service in the geozip where the service was performed. (A geozip, which defines a geographic region in our database, generally corresponds to the first three digits of a zip code.)

> The estimate shown is based on the 80th percentile, meaning that 80% of the charges in our database for this procedure in your area were lower than or equal to our estimate and 20% were higher than or equal to our estimate. We use the 80th percentile because many insurers use the 80th percentile to determine usual, customary and reasonable (UCR) rates upon which they base out-of-network reimbursement.

34.    The following chart compares a sample of the allowed amounts that BCBS applied to

Lutz's claims for HMO insureds with Medicare allowed amounts and the usual and customary

charges identified by FAIR Health for 33548 (Lutz's zip code identified in BCBS' Explanation of

Payments to Lutz):

| CPT CODE | Medicare Allowable Amount | Fair Health UCR | BCBS Allowable Amount (2016/2017) | Percentage of BCBS Allowed/Medicare Allowable | Percentage of BCBS Allowed/ Fair Health UCR |
|---|---|---|---|---|---|
| 44120 | $1,472.49 | $3,754.84 | $1,442.42 | 98.0% | 38.4% |
| 44143 | $2,000.49 | $4,668.67 | $1,959.96 | 98.0% | 42.0% |
| 44970 | $718.41 | $1,819.00 | $705.59 | 98.2% | 38.8% |
| 47562 | $787.45 | $2,083.01 | $773.39 | 98.2% | 37.1% |
| 49020 | $1,910.45 | $4,199.13 | $1,871.27 | 97.9% | 44.6% |
| 49565 | $919.36 | $2,509.67 | $450.46 | 49.0% | 18% |
| 49585 | $529.02 | $1,414.00 | $518.28 | 98% | 36.7% |

6144728.1

| 51702 | $30.24 | $154.00 | $29.70 | 98.2% | 29.3% |
|---|---|---|---|---|---|
| 99222 | $156.54 | $316.00 | $153.92 | 98.3% | 48.7% |
| 99232 | $82.23 | $164.16 | $80.76 | 98.2% | 49.2% |
| 99284 | $135.63 | $1,234.00 | $138.35 | 102% | 11.2% |
| **TOTAL:** | $8,742.31 | $22,316.48 | $8,124.10 | 93% | 36.4% |

35.     These CPT Codes represent the following services:  44120 - partial removal of small bowel; 44143 - partial removal of large bowel with creation of opening; 44970 - removal of appendix using an endoscope; 47562 - removal of gallbladder using an endoscope; 49020 - drainage of abdominal abscess or infection, open procedure; 49565 - repair of incisional or abdominal hernia; 49585 - repair of hernia at navel patient age 5 years or older; 51702 - insertion of indwelling bladder catheter; 99222 - initial hospital inpatient care, typically 50 minutes per day; 99232 - subsequent hospital inpatient care, typically 25 minutes per day; and 99284 emergency department visit, problem of high severity.

36.     Based on these numbers, BCBS allowed and paid approximately 36.4% of usual and customary charges as reported by FAIR Health.

37.     At no time has BCBS ever provided Lutz with any evidence or information to establish that its allowable rates are the "usual and customary provider charges for similar services in the community where the services were provided." In fact, BCBS' maximum allowable payments are far below such usual and customary charges, in direct violation of Florida law.

## CLASS REPRESENTATION ALLEGATIONS

38.     BCBS' illegality with respect to the claims submitted by Lutz is not unique to Lutz. Rather, it flows from a systemic methodology that BCBS has adopted and applied to other similarly situated ONET providers.

10

6144728.1

39.   Thus, Lutz brings this action on its own behalf and as a class action pursuant to Florida Rules of Civil Procedure §§ 1.220(b)(1)-(3), on behalf of a class defined as follows:

> Any and all Physicians, Physician Groups and Physician Organizations who provided, during the applicable statute of limitations, Emergency Services and Care in Florida to any Health Insurance Policy Insureds or HMO Plan Members and who were paid by BCBS for those services outside of any contract or agreement (the "Class").

Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the Class definition. Excluded from the Class are BCBSF, Health Options, DHS, GMHC, GuideWell Group, Inc., their parents, subsidiaries and affiliates, their directors, officers and employees, and members of their immediate families.

40.   The members of the Class are so numerous that joinder of all members is impractical. While the precise number of members in the Classes is known only to BCBS, the Class consists of hundreds (if not thousands) of providers, each of whom can be identified in business records maintained by BCBS.

41.   Common questions of law and fact exist as to all Class members and predominate over any questions affecting individual members of the Class, including, *inter alia,* the following class action claims, issues and defenses:

(a)   Whether BCBS' conduct proximately caused and causes injury to Plaintiff and the Class members' business or property or irreparably harmed and harms Plaintiff and the Class;

(b)   Whether BCBS' conduct violated Florida law;

(c)   Whether Plaintiff and members of the Class have standing to challenge BCBS' conduct;

(d)   Whether BCBS' methodology violates § 641.513(5) and § 627.64194(4);

6144728.1

(e) Whether BCBS is liable to Plaintiff and the Class under *quantum meruit* (work and labor done);

(f) Whether BCBS has been unjustly enriched through the activities described herein;

(g) Whether Plaintiff and the other members of the Class are entitled to injunctive relief to prevent BCBS' continuing violation of § 641.513(5) and § 627.64194(4);

(h) Whether Plaintiff and the Class are entitled to a declaratory judgment that BCBS' conduct violated and continues to violate § 641.513(5) and § 627.64194(4); and

(i) Whether Plaintiff and the Class are entitled to monetary relief to redress BCBS' violation of § 641.513(5) § 627.64194(4).

42. Lutz's claims are typical of the claims of the Class members in that Plaintiff alleges a common course of conduct by BCBS towards members of the Class. Plaintiff and the other members of the Class, all non-participating health care providers, have been paid by BCBS for providing emergency services and care in amounts which do not comply with § 641.513(5) or § 627.64194. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and there is no antagonism or material factual variation between Plaintiff's claims and those of the Class.

43. Lutz will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and the prosecution of insurance law claims and has no interests antagonistic to or in conflict with those of the Class.

44. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications which could establish incompatible

12

standards of conduct for BCBS. For example, without class certification, one Class member might successfully challenge BCBS' rates as not being usual and customary and obtain an injunction preventing BCBS from applying its rates to that particular Class member, whereas another Class member might not be successful in bringing such a challenge and might not obtain an injunction requiring BCBS to alter its practices. Thus, the proposed Class satisfies the requirements of Rule 1.220(b)(1)(A).

45.     By routinely paying out-of-network providers who provided emergency services to BCBS Insureds under health insurance policies and HMO plans pursuant to a methodology that purports to pay usual and customary rates but does not actually do so, BCBS has acted and refused to act on grounds that apply generally to the Class. BCBS' uniform conduct towards Plaintiff and the other members of the Class, therefore, makes certification under Rule 1.220(b)(2) appropriate with respect to the injunctive and declaratory relief sought.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Further, because the unpaid payments denied Class members may be small relative to the expense and burden of individual litigation, it would be impossible for the Class members to individually redress the harm done to them. Certification of the proposed Class under Rule 1.220(b)(3) is therefore proper.

47.     BCBS maintains claims databases that record when and how they issued benefit payments to providers who provided emergency room services to patients insured under BCBS' health insurance policies and HMO plans. Accordingly, the members of the Class can be readily and objectively ascertained through use of records maintained by BCBS.

13

## FIRST CAUSE OF ACTION
### Against BCBSF, Health Options, and GMHC
### Violation of § 641.513(5), Florida Statutes

48.     Plaintiff incorporates and realleges paragraphs 1 through 47 as if fully set out herein.

49.     BCBS has violated and continues to violate § 641.513(5) by failing to pay the amounts set forth in that statute. BCBS' payment policy is not based on the provider's charges, is not based on an amount mutually agreed to by BCBS and the providers, and is not based on the usual and customary provider charges for similar services in the community where the services were provided.

50.     As a direct and proximate result of BCBS' violation of § 641.513(5), Plaintiff and the Class have been damaged in an amount to be determined. They are entitled to such damages or, at a minimum, injunctive relief requiring BCBS to reprocess emergency service claims that were illegally underpaid pursuant to BCBS' illegal rate setting methodology.

51.     Plaintiff and the Class are also entitled to prospective permanent injunctive relief to prevent BCBS from continuing to engage in the improper conduct described herein. Absent appropriate injunctive relief, BCBS can and will continue to improperly pay Plaintiff and the other members of the Class at the improperly reduced amount in violation of § 641.513(5). Under these circumstances, neither monetary damages nor retrospective injunctive relief will be sufficient to remedy BCBS' continued wrongdoing, and the balance of equities clearly tips in favor of granting injunctive relief.

52.     Plaintiff and the Class are also entitled to a declaratory judgment that BCBS' methodology is illegal.

14

53.    Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages recoverable from BCBS. Plaintiff also seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive and declaratory relief against BCBS. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary and non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

### SECOND CAUSE OF ACTION
### Against BCBSF and GMHC
### Violation of § 627.64194(4), Florida Statutes

54.    Plaintiff incorporates and realleges paragraphs 1 through 47 as if fully set out herein.

55.    BCBSF and GMHC have violated and continue to violate § 627.64194(4) by failing to pay the amounts set forth in that statute. BCBSF and GMHC's payment policy is not based on the provider's charges, is not based on an amount mutually agreed to by BCBSF or GMHC and the providers, and is not based on the usual and customary provider charges for similar services in the community where the services were provided.

56.    As a direct and proximate result of BCBSF and GMHC's violation of § 627.64194(4), Plaintiff and the Class have been damaged in an amount to be determined. They are entitled to such damages or, at a minimum, injunctive relief requiring BCBSF and GMHC to reprocess emergency service claims that were illegally underpaid pursuant to BCBSF and GMHC's illegal rate setting methodology.

57.    Plaintiff and the Class are also entitled to prospective permanent injunctive relief to prevent BCBSF and GMHC from continuing to engage in the improper conduct described herein. Absent appropriate injunctive relief, BCBSF and GMHC can and will continue to improperly pay

6144728.1

Plaintiff and the other members of the Class at the improperly reduced amount in violation of § 627.64194(4). Under these circumstances, neither monetary damages nor retrospective injunctive relief will be sufficient to remedy BCBSF and GMHC's continued wrongdoing, and the balance of equities clearly tips in favor of granting injunctive relief.

58.     Plaintiff and the Class are also entitled to a declaratory judgment that BCBSF and GMHC's methodology is illegal.

59.     Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all actual and consequential damages recoverable from BCBSF and GMHC. Plaintiff also seeks to obtain a non-pecuniary benefit for the Class in the form of injunctive and declaratory relief against BCBSF and GMHC. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary and non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

### THIRD CAUSE OF ACTION
### Against BCBSF, Health Options, and GMHC
### Unjust Enrichment/Quantum Meruit

60.     Plaintiff incorporates and realleges paragraphs 1 through 47 above as if fully set out herein.

61.     BCBS, through the acts and omissions described herein, is in possession of money that is the rightful property of Plaintiff and the Class.

62.     As a result, BCBS has been unjustly enriched by its activities and Plaintiff and the Class have suffered a detriment.

63.     Plaintiff and the Class members have provided medical services to patients insured by BCBS or BCBS' health plans, without entering a written contractual relationship with BCBS. Accordingly, Plaintiff and the Class have conferred benefits upon BCBS.

16

64.     BCBS has knowledge that Plaintiff and the Class treated its subscribers and conferred benefits upon BCBS and has accepted the benefits conferred.

65.     Plaintiff and the Class members are entitled to receive compensation for their work and labor in accordance with Florida law.

66.     BCBS has wrongfully withheld compensation for the work and labor performed.

67.     The circumstances are such that it is inequitable for BCBS to retain the benefits without paying the fair rate for them.

68.     Plaintiff and the Class therefore seek reimbursement and restitution for their work and labor due in an amount to be determined by this Court or, at a minimum, injunctive relief requiring BCBS to reprocess emergency service claims that were illegally underpaid pursuant to BCBS' illegal rate setting methodology.

69.     Plaintiff and the Class are also entitled to permanent injunctive relief to prevent BCBS from continuing to engage in the improper conduct described herein. Absent appropriate injunctive relief, BCBS can and will continue to pay Plaintiff and the other members of the Class at the improperly reduced amount in violation of § 641.513(5), § 627.64194(4) and the fair value of the services provided, making it continuously liable for unjust enrichment and under *quantum meruit*. Under these circumstances, restitution, reimbursement and disgorgement will be insufficient to remedy BCBS' continued wrongdoing, and the balance of equities clearly tips in favor of granting injunctive relief.

70.     Plaintiff and the Class are also entitled to a declaratory judgment that BCBS' methodology is illegal.

71.     Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of reimbursement, restitution and disgorgement of all monies owed by BCBS. Plaintiff also seeks to

17

6144728.1

obtain a non-pecuniary benefit for the Class in the form of injunctive relief against BCBS. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary and non-pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

WHEREFORE, Plaintiff Lutz demands the following relief:

A.     An order certifying the Class under the appropriate provisions of Rule 1.220, as well as any appropriate subclasses, and appointing Plaintiff as class representative and its legal counsel, Zuckerman Spaeder LLP, as Class Counsel;

B.     For the named Plaintiff and the Class, declaratory and injunctive relief against BCBS as this Court deems necessary and proper;

C.     For the named Plaintiff and the Class, monetary relief against BCBS in the amount of their actual and consequential damages;

D.     Pre- and post-judgment interest to Plaintiff and the Class, as allowed by law;

E.     Reasonable attorneys' fees and costs to counsel for the Class for conferring pecuniary and non-pecuniary benefits to the Class; and

F.     Such other and further relief as is just and proper.

6144728.1

## DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of itself and all others similarly situated, hereby demands a jury trial on all issues so triable.

Dated:  August 10, 2017

Respectfully submitted,

/s/ Nathan M. Berman
Nathan M. Berman
Florida Bar No.: 0329230
nberman@zuckerman.com
ZUCKERMAN SPAEDER LLP
101 East Kennedy Boulevard, Suite 1200
Tampa, Florida 33602
Tel: (813) 221-1010
Fax: (813) 223-7961

D. Brian Hufford (*Pro hac vice pending*)
dbhufford@zuckerman.com
Jason S. Cowart (*Pro hac vice pending*)
jcowart@zuckerman.com
Anant Kumar (*Pro hac vice pending*)
akumar@zuckerman.com
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, New York 10022
Tel: (212) 704-9600
Fax: (212) 704-4256

*Counsel for Plaintiff and the Putative Class*

6144728.1